# EXHIBIT 1

Exhibit 1
Page 11 of 777

RECORDING REQUESTED BY
CITY OF SAN DIEGO
DEVELOPMENT SERVICES DEPARTMENT

AND WHEN RECORDED MAIL TO
PERMIT INTAKE
MAIL STATION 501

SPACE ABOVE THIS LINE FOR RECORDER'S USE

CONDITIONAL USE PERMIT NO. 94-0548
NEXTEL - SAN DIEGO BORDER COMMUNICATIONS FACILITY

CITY COUNCIL

This conditional use permit is granted by the City Council of the
City of San Diego to SAN YSIDRO SCHOOL DISTRICT, Owner, NEXTEL
COMMUNICATIONS, INC., Permittee, pursuant to Section 101.0510 of
the Municipal Code of the City of San Diego.

1.  Permission is granted to Owner/Permittee to construct an
    800-square-foot unmanned dispatch mobile radio communication
    facility, located on San Ysidro School District property at
    4350 Otay Mesa Road, also described as a portion of
    Section 36, Township 18 South, Range 2 West, San Bernardino
    Meridian, in the City of San Diego, County of San Diego,
    State of California, in the R1-5000 zone.

2.  The facility shall consist of the following:

    a.  A 90-foot-high monopole with up to 12 vertical panel
        antennas and three 16-foot-high whip antennas mounted
        on the monopole, not to exceed a maximum height of
        106 feet;

    b.  An 800-square-foot chainlink fence enclosure;

    c.  A two hundred-square-foot equipment shelter;

    d.  Off-street parking to be located outside the fence on
        the existing paved parking lot that services the school
        district maintenance facility;

    e.  Landscaping around the perimeter of the
        fenced enclosure;

    f.  Accessory uses as may be determined incidental and
        approved by the Planning Commission.

3.  One parking space shall be provided at the maintenance
    yard facility.

YOUR COPY

-PAGE 1 OF 5-

DO NOT RECORD

Exhibit
Page ___ of ___

4. No permit for construction of any facility shall be granted nor shall any activity authorized by this permit be conducted on the premises until:

   a. The Permittee signs and returns the permit to the Development Services Department, Development and Environmental Planning (DEP) Division;

   b. The conditional use permit is recorded by the Development Services Department in the office of the County Recorder.

5. Before issuance of any building permits, complete grading and building plans shall be submitted to the Development Services Director for approval. Plans shall be in substantial conformance to Exhibit "A," dated October 3, 1995, on file in the office of the Development Services Department, DEP Division. No change, modifications or alterations shall be made unless substantial conformance review or amendment of this permit shall have been granted.

6. Prior to the issuance of any building permits, the applicant shall:

   a. Ensure that building address numbers are visible and legible from the street (Uniform Fire Code ("UFC") § 10.208).

   b. Show the location of all fire hydrants on the plot plan (UFC § 10.301).

7. Before issuance of any grading or building permits, a complete landscape plan, including a temporary irrigation system, shall be submitted to the Development Services Director for approval. The plans shall be in substantial conformance to Exhibit "A," dated October 3, 1995, on file in the office of the Development Services Department. Approved planting shall be installed before issuance of any occupancy permit on any building. Such planting shall not be modified or altered unless this permit has been amended and is to be maintained in a disease, weed and litter free condition at all times.

8. If and/or when Otay Mesa Road is improved, Nextel Communications, Inc. shall be responsible for providing street trees along the project's street frontage as shown on Exhibit "A," dated October 3, 1995. Seven 36-inch box trees or eighteen 24-inch box trees shall be provided. The type of tree shall be to the satisfaction of the Development Services Director. The trees shall be permanently irrigated in accordance with the City of San Diego Landscape Technical Manual.



DO NOT RECORD

Exhibit
Page of

9. If any work is proposed within the Caltrans right-of-way, an encroachment permit will be required from the Caltrans Permit Office.

10. This conditional use permit must be used within 36 months after the date of City approval or the permit shall be void. An Extension of Time may be granted as set forth in Section 111.1122 of the Municipal Code. Any extension of time shall be subject to all standards and criteria in effect at the time the extension is applied for.

11. Construction and operation of the approved use shall comply at all times with the regulations of this or any other governmental agencies.

12. After establishment of the project, the property shall not be used for any other purposes unless:

    a. Authorized by the Planning Commission; or

    b. The proposed use meets every requirement of the zone existing for the property at the time of conversion; or

    c. The permit has been revoked by the City.

13. This conditional use permit shall expire ten years from the effective date of the approved permit, unless a new application for a conditional use permit is submitted to the Development Services Department, DEP Division 90 days in advance of the expiration date.

14. Should the new permit application be denied by the Planning Commission, this permit will automatically expire 90 days from the date of action by the approving authority; and

    a. The permittee shall cease and desist all activity on the site within that 90 days; and

    b. The permittee shall return the site to original condition within 90 days from the date of action by the approving authority.

15. This conditional use permit may be revoked by the City if there is a material breach or default in any of the conditions of this permit.

16. This conditional use permit is a covenant running with the subject property and shall be binding upon the Permittee and any successor or successors, and the interests of any successor shall be subject to each and every condition set out in this permit and all referenced documents.

17. All of the conditions contained in this permit have been considered and have been determined to be necessary in order

-PAGE 3 OF 5-

YOUR COPY

DO NOT RECORD

Exhibit 1
Page 30 of 111

to make the findings required for this discretionary permit. It is the intent of the City that the holder of this permit be required to comply with each and every condition in order to be afforded special rights which the holder of the permit is obtaining as a result of this permit. It is the intent of the City that the owner of the property which is the subject of this permit either utilize the property for any use allowed under the zoning and other restrictions which apply to the property or, in the alternative, that the owner of the property be allowed the special and extraordinary rights conveyed by this permit, but only if the owner complies with all the conditions of this permit.

In the event that any condition of this permit, on a legal challenge by the Owner/Permittee of this permit, is found or held by a court of competent jurisdiction to be invalid, unenforceable or unreasonable, this permit shall be void. However, in such event, the Owner/Permittee shall have the right, by paying applicable processing fees, to bring a request for a new permit without the "invalid" condition back to the discretionary body which approved the permit for a determination by that body as to whether all of the findings necessary for the issuance of the permit can still be made in the absence of the "invalid" condition(s). Such hearing shall be a hearing de novo and the discretionary body shall have the absolute right to approve, disapprove or modify the proposed permit and the condition(s) contained therein.

18. The issuance of this permit by the City of San Diego does not authorize the applicant for said permit to violate any Federal, State or City laws, ordinances, regulations or policies including, but not limited to, the Federal Endangered Species Act of 1973 and any amendments thereto (16 U.S.C. Section 1531 et seq.).

Passed and adopted by the City Council on October 3, 1995 by Resolution No. R-286390.



YOUR COPY

DO NOT RECORD

Exhibit
Page 31 of 111

AUTHENTICATED BY THE CITY MANAGER

By _____

---

     The undersigned Permittee, by execution hereof, agrees to each and every condition of this permit and promises to perform each and every obligation of Permittee hereunder.

                            San Ysidro School District
                            Owner

                            By_____

                            NEXTEL COMMUNICATIONS, INC.
                            Permittee

                            By_____

NOTE:  Notary acknowledgments must be attached per Civil Code Section 1180, et seq. Form=p.ack



DO NOT RECORD

Exhibit 1
Page 22 of 117

RECORDING REQUESTED BY
CITY OF SAN DIEGO
PLANNING & DEVELOPMENT REVIEW

AND WHEN RECORDED MAIL TO
PERMIT INTAKE
MAIL STATION 501

SPACE ABOVE THIS LINE FOR RECORDER'S USE

CONDITIONAL USE PERMIT NO. 94-0548
**TOWER ASSET, INC. BY SPECTRA SITE COMMUNICATIONS INC.**
**CORRECTED VERSION AUGUST 15, 2000**

This Conditional Use Permit, is granted by the City Council of
the City of San Diego to SAN YSIDRO SCHOOL DISTRICT, Owner, TOWER
ASSET, INC. BY SPECTRA SITE COMMUNICATIONS INC., Permittee
pursuant to Section 101.0510 of the Municipal Code of the City of
San Diego.

1.    Permission is granted to Owner/Permittee to construct an
800-square-foot unmanned dispatch mobile ratio communication
facility, located on San Ysidro School District property at
4350 Otay Mesa Road, also described as a portion of Section 36,
Township 18 south, Range 2 West, San Bernardino Meridian, in the
City of San Diego, County of San Diego, State of California, in
the R1-5000 Zone.

2.    The facility shall consist of the following:

    a.    A 90-foot-high monopole with up to 12 vertical panel
          antennas and three 16-foot-high whip antennas mounted
          on the monopole, not to exceed a maximum height of
          106 feet;

    b.    An 800-square-foot chainlink fence enclosure;

    c.    A two hundred-square-foot equipment shelter;

    d.    Off-street parking to be located outside the fence on
          the existing paved parking lot that services the school
          district maintenance facility;

    e.    Landscaping around the perimeter of the fenced
          enclosure;

    f.    Accessory uses as may be determined incidental and
          approved by the Planning Commission.

- PAGE 1 of 5 -

ORIGINAL

SCANNED

Exhibit /
Page 22 of /71

3.   One parking space shall be provided at the maintenance yard facility.

4.   No permit for construction of any facility shall be granted nor shall any activity authorized by this permit be conducted on the premises until:

    a.   The Permittee signs and returns the permit to the Planning and Development Review Department, Land Development Review (LDR) Division;

    b.   The Conditional Use Permit is recorded by the Planning and Development Review Department in the Office of the County Recorder.

5.   Before issuance of any building permits, complete grading and building plans shall be submitted to the Planning and Development Review Director for approval.  Plans shall be in substantial conformance to Exhibit "A," dated October 3, 1995, on file in the Office of the Planning and Development Review Department, LDR Division.  No change, modifications or alterations shall be made unless substantial conformance review or amendment of this permit shall have been granted.

6.   Prior to the issuance of any building permits, the applicant shall:

    a.   Ensure that building address numbers are visible and legible from the street (Uniform Fire Code ("UFC") § 10.208).

    b.   Show the location of all fire hydrants on the plot plan (UFC § 10.301).

7.   Before issuance of any grading or building permits, a complete landscape plan, including a temporary irrigation system, shall be submitted to the Planning and Development Review Director for approval.  The plans shall be in substantial conformance to Exhibit "A," dated October 3, 1995, on file in the Office of the Planning and Development Review Department. Approved planting shall be installed before issuance of any occupancy permit on any building.  Such planting shall not be modified or altered unless this permit has been amended and is to be maintained in a disease, weed and litter free condition at all times.

8.   If and/or when Otay Mesa road is improved, Nextel Communications, Inc. shall be responsible for providing street trees along the project's street frontage as shown on Exhibit "A," dated October 3, 1995.  Seven 36-inch box trees or eighteen 24-inch box trees shall be provided.  The type of tree

ORIGINAL

Exhibit 1
Page 24 of 111

shall be to the satisfaction of the Planning and Development Review Director. The trees shall be permanently irrigated in accordance with the City of San Diego *Landscape Technical Manual*.

9.    If any work is proposed within the Caltrans right-of-way an encroachment permit will be required from the Caltrans permit Office.

10.    This Conditional Use Permit must be used within 36 months after the date of City approval or the permit shall be void. An Extension of Time may be granted as set forth in Section 111.1122 of the Municipal Code. Any Extension of Time shall be subject to all standards and criteria in effect at the time the extension is applied for.

11.    Construction, and operation of the approved use shall comply at all times with the regulations of this or any other governmental agencies.

12.    After establishment of the project, the property shall not be used for any other purposes unless:

      a.    Authorized by the Planning Commission, or

      b.    The proposed use meets every requirement of the zone existing for the property at the time of conversion; or

      c.    The permit has been revoked by the City.

13.    This Conditional Use Permit shall expire ten years from the effective date of the approved permit, unless a new application for a Conditional Use Permit is submitted to the Planning and Development Review Department, LDR Division 90 days in advance of the expiration date.

14.    Should the new permit application be denied by the Planning Commission, this permit will automatically expire 90 days from the date of action by the approving authority; and

      a.    The Permittee shall cease and desist all activity on the site within that 90 days; and

      b.    The Permittee shall return the site to original conditions within 90 days from the date of action by the approving authority.

15.    This Conditional Use Permit may be revoked by the City if there is a material breach or default in any of the conditions of this permit.

- PAGE 3 of 5 -

ORIGINAL

Exhibit 1
Page 11 of 111

16. This Conditional Use Permit is a covenant running with the subject property and shall be binding upon the Permittee and any successor or successors, and the interests of any successor shall be subject to each and every condition set out in this permit and all referenced documents.

17. All of the conditions contained in this permit have been considered and have been determined to be necessary in order to make the findings required for this discretionary permit. It is the intent of the City that the holder of this permit be required to comply with each and every condition in order to be afforded special rights which the holder of the permit is obtaining as a result of this permit. It is the intent of the City that the owner of the property which is the subject of this permit either utilize the property for any use allowed under the zoning and other restrictions which apply to the property or, in the alternative, that the owner of the property be allowed the special and extraordinary rights conveyed by this permit, but only if the owner complies with all the conditions of this permit.

18. The issuance of this permit by the City of San Diego does not authorize the applicant for said permit to violate any Federal, State or City laws, ordinances, regulations or policies including, but not limited to, the Federal Endangered Species Act of 1973 and any amendments thereto (16 U.S.C. Section 1531 et seq.).

Passed and adopted by the City Council on October 3, 1995 by Resolution No. R-286390.

- PAGE 4 of 5 -

ORIGINAL

Exhibit 1
Page 22 of 777

AUTHENTICATED BY THE CITY MANAGER

By_____

_____

      The **undersigned Permittee**, by execution hereof, agrees to each and every condition of
this permit and promises to perform each and every obligation of Permittee hereunder.

San Ysidro School District
Owner

By _____

TOWER ASSET, INC. BY SPECTRASITE
COMMUNICATIONS, INC.
Permittee

By _____
ANDREW H. CHRISTIAN, JR.
Director, Collocation Operations

**NOTE: Notary acknowledgments
must be attached per Civil
Code Section 1180, et seq.
Form=p.ack**

- PAGE 5 of 5 -

```
ORIGINAL
```

Exhibit 1
Page 21 of 117



FIRST AMERICAN

STATE OF CALIFORNIA
COUNTY OF _____SAN DIEGO_____ }ss.

On_September 8, 2000_____, before me, _____Alice F. Perez, Notary Public_____,
personally appeared _____JACK N. GOAD_____

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____


ALICE F. PEREZ
Commission # 1247444
Notary Public - California
San Diego County
My Comm. Expires Jan 24, 2004


(This area for official notarial seal)

Title of Document _Conditional Use Permit No. 94-0548_
Date of Document ___Version August 15, 2000__ No. of Pages _5_
Other signatures not acknowledged ____Andrew H. Christian Jr.__

3008 (1/94) (General)
First American Title Insurance Company

Exhibit __
Page __ of __

## NORTH CAROLINA, WAKE COUNTY

I, a Notary Public of the County and State aforesaid, certify that **ANDREW H.  CHRISTIAN, JR** personally appeared before me this day and acknowledged the execution of the foregoing instrument: CONDITIONAL USE **PERMIT NO. 94-0548 (TOWR ASSET, INC. BY SPECTRA SITE COMMUNICATIONS INC. CORRECTED VERSION AUGUST 15, 2000).**  Witness my hand and official stamp or seal, this 6th day of September, 2000.

My commission expires:

1-13-04

_____Notary Public

**Holly D. Bender**

SEAL-STAMP:

HOLLY D. BENDER
NOTARY
* * *
PUBLIC
WAKE COUNTY, N.C.

Exhibit 1
Page 11 of 112

# EXHIBIT 2

Exhibit 2
Page 40 of 171

(R-96-381)

RESOLUTION NUMBER R-286390

ADOPTED ON OCTOBER 3, 1995

WHEREAS, on September 15, 1994, SAN YSIDRO SCHOOL DISTRICT, Owner, and NEXTEL COMMUNICATIONS, INC., Permittee, filed an application for a conditional use permit to construct and operate an 800-square-foot unmanned dispatch mobile radio communication facility located at 4350 Otay Mesa Road, also described as a portion of Section 36, Township 18 South, Range 2 West, San Bernardino Meridian, in the City of San Diego, County of San Diego, State of California, in the R1-5000 zone; and

WHEREAS, on June 1, 1995, Phillip D. Taylor and Bruce Tabb filed an appeal of the Planning Commission's decision for reasons cited as inadequate environmental review and visual impacts; and

WHEREAS, on October 3, 1995, the Council of The City of San Diego considered the appeal of Philip D. Taylor and Bruce Tabb and considered Conditional Use Permit No. 94-0548, pursuant to Section 101.0510 of the Municipal Code of the City of San Diego; and NOW, THEREFORE,

BE IT RESOLVED, by the Council of The City of San Diego, that this Council adopts the following findings with respect to Conditional Use Permit No. 94-0548:

1.    **The proposed use will fulfill an individual and community need and will not adversely affect the General Plan or the Community Plan.**

The project site is designated for low density residential development by the General Plan and the San Ysidro Community

-PAGE 1 OF 3-

YOUR COPY

DO NOT RECORD

Exhibit 2
Page 11 of 111

Plan. Nevertheless, particular uses which fulfill individual and community needs are permitted in residential and other zones by Conditional Use Permit. This project will not adversely impact the General Plan nor the San Ysidro Community Plan. Perimeter landscaping and neutral colors on exterior surfaces will effectively screen the facility and allow the fence, equipment building and monopole to blend with surrounding vistas.

2. **The proposed use, because of conditions that have been applied to it, will not be detrimental to the health, safety and general welfare of persons residing or working in the area and will not adversely affect other property in the vicinity.**

Radio frequency energy transmission from the proposed whip antennas and panels would not result in significant health and safety risks to the surrounding area. The transmissions would have a maximum of 6.50 microwatts per square centimeter, well below the accepted safety standard of 567 microwatts per square centimeter established by the American National Standards Institute and the National Council on Radiation Protection.

3. **The proposed use will comply with the relevant regulations in the Municipal Code.**

The proposed facility and the existing school district facility comply with the relevant regulations in the Municipal Code. Landscape screening will be provided. One of the existing parking spaces will be designated for use by Nextel and will meet the parking requirement for this project.

The above findings are supported by the minutes, maps and exhibits, all of which are herein incorporated by reference.

-PAGE 2 OF 3-



DO NOT RECORD

Exhibit 2
Page 42 of 111

BE IT FURTHER RESOLVED, that the Council hereby grants the appeal of Bruce Tabb and Philip Taylor from the decision of the Planning Commission in approving Conditional Use Permit No. 94-0548 for the NEXTEL-San Diego Border Communication Facility.

BE IT FURTHER RESOLVED, that the Council does hereby amend the terms of the subject conditional use permit as follows: that after one year staff is to return to Council with a report on the status of the negotiations for a different site and.  In all other aspects the actions of the Planning Commission were and are sustained and Conditional Use Permit No. 94-0548 is hereby granted to SAN YSIDRO SCHOOL DISTRICT, Owner, NEXTEL COMMUNICATIONS, INC., Permittee, under the terms and conditions set forth in the permit attached hereto and made a part hereof.

APPROVED:   JOHN W. WITT, City Attorney

By _____
      John K. Riess
      Senior Deputy City Attorney

JKR:pev
10/11/95
Or.Dept:Clerk
R-96-381
Form=r.permit

-PAGE 3 OF 3-



DO NOT RECORD

Exhibit 2
Page 43 of 777

Passed and adopted by the Council of San Diego on

OCT 03 1995

by the following vote:

YEAS: Mathis, Harvey, Kehoe, Stevens, Warden, Stallings,

McCarty, Vargas.

NAYS: None.

NOT PRESENT: Mayor Golding.

AUTHENTICATED BY:

SUSAN GOLDING
Mayor of The City of San Diego, California

CHARLES G. ABDELNOUR
City Clerk of The City of San Diego, California

(Seal)

By: MARY CEPEDA , Deputy

I HEREBY CERTIFY that the above and foregoing is a full, true and
correct copy of RESOLUTION NO. R- 286390 ,
passed and adopted by the Council of The City of San Diego,
California on OCT 03 1995 .

CHARLES G. ABDELNOUR
City Clerk of The City of San Diego, California

(SEAL)

By: Mary Cepeda , Deputy

YOUR COPY

DO NOT RECORD

Exhibit 2
Page 44 of 111

# EXHIBIT 3

Exhibit 3
Page 45 of 111

DOC # 1996-0604773
03-DEC-1996   10:12 AM

1631

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY SMITH, COUNTY RECORDER
RF:      14.00   FEES:        36.00
AF:      19.00
MF:       1.00
CF:       2.00

RECORDING REQUESTED BY
CITY OF SAN DIEGO
DEVELOPMENT SERVICES

AND WHEN RECORDED MAIL TO
PERMIT INTAKE
MAIL STATION 501

SPACE ABOVE THIS LINE FOR RECORDER'S USE

CONDITIONAL USE/HILLSIDE REVIEW PERMIT
NO. 96-0118
PLANNING COMMISSION
DIABLO COMMUNICATIONS- MISSION  VALLEY

This Conditional Use/Hillside Review Permit is granted by the
Planning Commission of the City of San Diego to Pueblos Del Rio
North, Ltd.; OWNER; DIABLO COMMUNICATIONS, PERMITTEE; pursuant to
Section 101.0510, and 101.0254 of the Municipal Code of the City of
San Diego.

1.    Subject to the terms and conditions set forth in this permit,
permission is granted to the Owner/Permittee for the demolition of
an existing 180 foot high tower and the construction of a 175 foot
high self-supporting steel lattice tower located at 9042-B Friars
Road (Parcel 2 of Map No. 15779) in the R1-40,000 and HR zone of
the Mission Valley Community Plan.

2.    The facility shall consist of the following:

    a.    Demolition of a 180-foot high tower and the construction
          of a 175-foot high steel lattice tower, as illustrated
          on Exhibit "A" dated September 12, 1996 on file in the
          offices of the Development Services.

    b.    A maximum of 25 telecommunication providers whose
          combined facilities consist of no more than 77 whip
          antennas; six (6'- 0" maximum diameter) dishes at a
          maximum height of 100-feet; two (6'-0" maximum diameter)
          dishes at a maximum of 130-feet. The dishes must be flush
          mounted within the tower support structure with no
          protrusions outside of the tower's envelope.

    c.    A 1,152 square foot equipment storage building to be
          painted green and screened by the addition of trees to
          the site.

Page 1 of 9

Exhibit 3
Page 46 of 111



3.   Prior to obtaining building permits, Diablo Communications
must supply the list of providers scheduled to collocate on the
tower including the specific number of whip antennas, and dishes
and the approximate location on the tower for each company.

4.   Prior to obtaining building permits a landscape plan shall be
submitted illustrating screening of the equipment storage building
by native vegetation and trees.  Additionally, as part of the
landscape plan, irrigation of the vegetation and trees shall be
required for a period of one year satisfactory to the Development
Services Manager.

5.   No permit for construction of any facility shall be granted
nor shall any activity authorized by this permit be conducted on
the premises until:

   a.   The Permittee signs and returns the permit to the
        Development Services Department, Land Development Review
        Division;

   b.   The Conditional Use/Hillside Review Permit is recorded by
        the Development Services Department in the office of the
        County Recorder.

6.   Prior to the issuance of any building permits, the applicant
shall:

   a.   Ensure that building address numbers are visible and
legible from the street (UFC 10.208).

   b.   Show the location of all fire hydrants on the plot plan
(UFC 10.301).

7.   This development may be subject to impact fees, as established
by the City Council, at the time of issuance of building permits.

8.   This Conditional Use Permit/Hillside Review Permit must be
used within 36 months after the date of City approval or the permit
shall be void.  An Extension of Time may be granted as set forth in
Section 111.1122 of the Municipal Code.  Any extension of time
shall be subject to all standards and criteria in effect at the
time the extension is applied for.

9.   All plans shall be in substantial conformance to Exhibit "A",
dated September 12, 1996 on file in the offices of the Development
Services.  If any existing hardscape or landscape indicated on the
approved plans is damaged or removed during construction it shall

Exhibit 3
Page 47 of 111


ORIGINAL

be repaired and or replaced in kind per the approved plans.

10.   This Conditional Use/Hillside Review Permit is granted for a period of ten (10) years from September 12, 1996, at which time it will become null and void unless a new application for a Conditional Use Permit is applied for and approved under the procedures in effect at that time.  At such time as the Conditional Use Permit expires or ceases to be utilized, all antennas and equipment will be removed from the site by the last owner/permittee of the use.

11.   This Conditional Use/Hillside Review Permit may be revoked by the City if there is a material breach or default in any of the conditions of this permit.

12.   This Conditional Use/Hillside Review Permit is a covenant running with the subject property and shall be binding upon the owner/permittee and any successor or successors, and the interests of any successor shall be subject to each and every condition set out in this permit and all referenced documents.

13.   All of the conditions contained in this Permit have been considered and have been determined to be necessary in order to make the findings required for this discretionary permit.  It is the intent of the City that the holder of this permit be required to comply with each and every condition in order to be afforded special rights which the holder of the Permit is obtaining as a result of this permit.  It is the intent of the City that the owner of the property which is the subject of this permit either utilize the property for any use allowed under the zoning and other restrictions which apply to the property or, in the alternative, that the owner of the property be allowed the special and extraordinary rights conveyed by this permit, but only if the owner complies with all the conditions of this permit.

    In the event that any condition of this permit, on a legal challenge by the Owner/Permittee of this permit, is found or held by a court of competent jurisdiction to be invalid, unenforceable or unreasonable, this permit shall be void.  However, in such event, the Owner/Permittee shall have the right, by paying applicable processing fees, to bring a request for a new permit without the "invalid" condition back to the discretionary body which approved the permit for a determination by that body as to whether all of the findings necessary for the issuance of the permit can still be made in the absence of the "invalid" condition(s).  Such hearing shall be a hearing de novo and the discretionary body shall have the absolute right to approve, disapprove or modify the proposed permit and the condition(s)

Exhibit 3
Page 48 of 117

ORIGINAL


contained therein.

14.  The issuance of this permit by the City of San Diego does not authorize the applicant for said permit to violate any Federal, State or City laws, ordinances, regulations or policies including, but not limited to, the Federal Endangered Species Act of 1973 and any amendments thereto (16 U.S.C. Section 1531 et seq.).

15.  Within 30 days of expiration of this permit/or discontinuance of this use (operation of this facility) the Owner/Permittee shall restore the site to its original condition which may include appropriate landscaping or revegetation of native vegetation.

16.  The continued use of this permit shall be subject to the current and future regulations of the Federal Communications Commission and the California Public Utilities Commission. Construction and operation of the approved use shall comply at all times with the regulations of this or any other governmental agency.

Passed and adopted by the Planning Commission of the City of San Diego on September 12, 1996.

Exhibit 3
Page 49 of 117

ORIGINAL

# EXHIBIT 4

Exhibit 4
Page 10 of 117

PLANNING COMMISSION RESOLUTION NO. 2299-PC
GRANTING CONDITIONAL USE/HILLSIDE REVIEW
PERMIT NO. 96-0118
DIABLO COMMUNICATIONS-MISSION VALLEY

WHEREAS, Pueblos Del Rio North, Ltd., Owner; Diablo
Communications, Permittee; filed an application for a
Conditional Use/Hillside Review Permit to demolish a 180-foot
tower and construct a 175-foot high steel lattice tower which
includes 25 carriers whose combined facilities consist of 77
antennas and 8 microwave dishes and one 1,152 square foot
equipment building located at 9042-B Friars Road, (Parcel 2 of
Map No. 15779) in the R1-40,000 and HR zone of the Mission
Valley Community Plan Area; and

WHEREAS, on September 12, 1996, the Planning Commission of the
City of San Diego considered Conditional Use/Hillside Review
Permit No. 96-0118, pursuant to Section 101.0500, and 105.0201 of
the Municipal Code of the City of San Diego; and NOW, THEREFORE,

BE IT RESOLVED by the Planning Commission of the City of
San Diego as follows:

1.    That the Planning Commission adopted the following written
Findings, dated September 12, 1996:

CONDITIONAL USE PERMIT FINDINGS:

A.    THE PROPOSED USE WILL NOT ADVERSELY AFFECT THE
      NEIGHBORHOOD, THE GENERAL PLAN OR THE COMMUNITY PLAN.
      AND IF CONDUCTED IN CONFORMITY WITH THE CONDITIONS
      PROVIDED BY THE PERMIT, WILL NOT BE DETRIMENTAL TO THE
      HEALTH, SAFETY AND GENERAL WELFARE OF PERSONS RESIDING
      OR WORKING IN THE AREA; AND

      The proposed wireless communication facility will not
      adversely impact the General Plan or the Mission Valley
      Community Plan which designates the site for open
      space. Particular uses, such as wireless communication
      facilities which fulfill individual and community needs
      are permitted by a Conditional Use Permit. The
      proposed project will provide enhanced paging and
      wireless communication service to this community as
      well as to adjacent communities and will further reduce
      the need for additional monopoles in the area. The
      steel lattice tower is not located in a view corridor

Exhibit 4
Page 11 of 111


ORIGINAL

and would not block or obstruct views.  The proposed
project would reduce the need for other
telecommunication providers to locate in this area, or
adjacent communities.

No detrimental effects to the health, safety, and
general welfare are anticipated as a result of the
proposed project which conforms to safety standards of
the American National Standards Institute and the
National Council on Radiation Protection.

C.    THE PROPOSED USE WILL COMPLY WITH THE RELEVANT
      REGULATIONS IN THE MUNICIPAL CODE.

The proposed facility  complies with the relevant
regulations in the Municipal Code.  The proposed
facility would deviate from the 30'-0" height limit to
allow multiple providers to collocate on one large
tower in lieu of providing multiple towers in the
surrounding vicinity.  From a distance, the lattice
work of the steel tower will appear to be translucent.
All dishes will be flush mounted to reduce the amount
of visibility from the surrounding area.


HILLSIDE REVIEW PERMIT FINDINGS-MUNICIPAL CODE SECTION 101.0454

A.    THE SITE IS PHYSICALLY SUITABLE FOR THE DESIGN AND
      SITING OF THE PROPOSED STRUCTURE(S) AND WILL RESULT IN
      THE MINIMUM DISTURBANCE OF SENSITIVE AREAS.

No sensitive resources have been identified on this
site.The project as designed would be sited to minimize
any disturbance and would replace an existing facility
on a graded, flat portion of the site.

B.    THE GRADING PROPOSED IN CONNECTION WITH THE DEVELOPMENT
      WILL NOT RESULT IN SOIL EROSION, SILTING OF LOWER
      SLOPES, SLIDE DAMAGE, FLOODING, SEVERE SCARRING OR ANY
      OTHER GEOLOGICAL INSTABILITY WHICH WOULD AFFECT HEALTH,
      SAFETY AND GENERAL WELFARE AS APPROVED BY THE
      CITY ENGINEER.

The project as designed  proposes minimal grading in
connection with the design and construction of the
telecommunications facility.  The project site was
previously graded for the existing radio tower and
proposes only to excavate for the footings of the new

Page 6 of 9

Exhibit 4
Page 52 of 111



ORIGINAL

tower pad and equipment building.

C.    THE PROPOSED DEVELOPMENT RETAINS THE VISUAL QUALITY OF
THE SITE, THE AESTHETIC QUALITIES OF THE AREA AND THE
NEIGHBORHOOD CHARACTERISTICS BY UTILIZING PROPER
STRUCTURAL SCALE AND CHARACTER, VARIED ARCHITECTURAL
TREATMENTS, AND APPROPRIATE PLANT MATERIAL.

The proposed project would replace an existing 180-foot
tower with a 175-foot tower and would visually be
similar to the existing conditions.  This tower would
provide a unique opportunity for telecommunication
providers to collocate in one area instead of multiple
locations. Through conditions of the permit, the
proposed equipment building will be screened by
landscaping and painted to minimize visual impact and
preserve the aesthetic qualities of the area.

D.    THE PROPOSED DEVELOPMENT IS IN CONFORMANCE WITH THE
OPEN SPACE ELEMENT OF THE CITY'S <u>PROGRESS GUIDE AND
GENERAL PLAN</u>, THE OPEN SPACE AND SENSITIVE LAND ELEMENT
OF THE APPLICABLE COMMUNITY PLAN, ANY OTHER ADOPTED
APPLICABLE PLAN IN EFFECT FOR THIS SITE, AND THE ZONE.
THE APPLICANT HAS DISCUSSED THE FEASIBILITY OF OPEN
SPACE DEDICATIONS OR EASEMENTS WITH APPROPRIATE
CITY STAFF.

The additional appropriation of open space is not a
requirement of this project.  The visual environment of
the existing site includes an SDGE tower, powerlines,
an Airtouch facility and the existing 180-foot tower.
By allowing the existing tower to be replaced, the need
for other sites by providers would not be necessary in
the surrounding area. As designed, the project is in
conformance with the requirements of the City's
Progress Guide and General Plan.

E.    THE PROPOSED DEVELOPMENT IS IN CONFORMANCE WITH THE
QUALITATIVE GUIDELINES AND CRITERIA AS SET FORTH IN
DOCUMENT NO. RR-262129, "HILLSIDE DESIGN AND
DEVELOPMENT GUIDELINES."

The project is in conformance with the Qualitative
Guidelines and criteria as set forth in the "Hillside
Design and Development Guidelines".  The project would
be located on a previously graded site and would be
sited and designed to minimize disturbance.

Page 7 of 9

Exhibit 4
Page 82 of 777



2.   That said Findings are supported by maps and exhibits, all of which are herein incorporated by reference.

BE IT FURTHER RESOLVED that, based on the Findings hereinbefore adopted by the Planning Commission, Conditional Use Permit No. 96-0118 is hereby GRANTED to Owner/Permittee in the form and with the terms and conditions set forth in Conditional Use Permit No. 96-0118, a copy of which is attached hereto and made a part hereof.


Karen Lynch-Ashcraft
Senior Planner


Linda Lugano
Legislative Recorder to
the Planning Commission

Page 8 of 9

Exhibit 4
Page 34 of 777

ORIGINAL

ALL-PURPOSE CERTIFICATE

Type/Number of Document <u>CUP 96-0118</u>

Date of Approval <u>September 12, 1996</u>

STATE OF CALIFORNIA

*Karen Lynch-Ashcraft*

Karen Lynch Ashcraft, Senior Planner

COUNTY OF SAN DIEGO

On <u>September 27, 1996</u> before me, BARBARA J. HUBBARD (Notary Public), personally appeared Karen Lynch Ashcraft, Senior Planner of the Development Services Department of the City of San Diego, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Barbara J. Hubbard*

Barbara J. Hubbard

> BARBARA J. HUBBARD
> COMM. # 1056585
> Notary Public — California
> SAN DIEGO COUNTY
> My Comm. Expires MAY 16, 1999

(Seal)

---

PERMITTEE(S) SIGNATURE/NOTARIZATION:

THE UNDERSIGNED PERMITTEE(S), BY EXECUTION THEREOF, AGREES TO EACH AND EVERY CONDITION OF THIS PERMIT AND PROMISES TO PERFORM EACH AND EVERY OBLIGATION OF PERMITTEE(S) THEREUNDER.

Signed *G.G. Lindquist*                 Signed *Douglas Hill*

Typed Name Gerald G. Lindquist        Typed Name Douglas L. Hill, Vice President
DIABLO COMMUNICATIONS                  PUEBLOS DEL RIO NORTH

STATE OF *California*

COUNTY OF *Contra Costa*

On *October 9, 1996* before me, *Barbara Stewart* (Name of Notary Public) personally appeared *Gerald G. Lindquist*                                    , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(x) whose name(x) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(x) on the instrument the person(x), or the entity upon behalf of which the person(x) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Barbara Stewart*

> BARBARA STEWART
> COMM. # 1062896
> Notary Public — California
> CONTRA COSTA COUNTY
> My Comm. Expires JUL 4, 1999

(Seal)

Exhibit 4
Page 31 of 77

ORIGINAL

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of _California_

County of _San Diego_

On _Dec. 2, 1996_ before me, _K. A. Brown_

Date                           Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Douglas L Hill_

Name(s) of Signer(s)

☒ personally known to me – OR – ☐ ~~proved to me on the basis of satisfactory evidence~~ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

K. A. BROWN
Commission # 1096750
Notary Public — California
San Diego County
My Comm. Expires May 1, 2000

WITNESS my hand and official seal.

_K. A. Brown_

Signature of Notary Public

──────── OPTIONAL ────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _Conditional Hillside/use Review Permit_

Document Date: _n/a_             Number of Pages: _4_

Signer(s) Other Than Named Above: _n/a_

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _Douglas. L. Hill_

☐ Individual
☒ Corporate Officer
     Title(s): _Vice President_
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____

☐ Individual
☐ Corporate Officer
     Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

Exhibit __
Page __ of __

# EXHIBIT 5

Exhibit 5
Page 31 of 777



## Site Justification Letter

**Location:**                                    4350 Otay Mesa Road
**Zone:**                                        R1-5000 Zone
**APN:**                                         638-070-69
**American Tower/SpectraSite Number**            302252/CA-5129
**Conditional Use Permit #**                     CUP No. 94-0548
**Permit Expiration Date**                       10/3/05
**Contacts**                                     Robert Jystad, Esq.
                                                 Tel: 310-209-8515; Fax 310-984-5132
                                                 rjystad@sbcglobal.net
                                                 James Kelly
                                                 Tel: 949-442-6407; Fax: (949) 474-7260
                                                 James.Kelly@americantower.com
                                                 Doug Kearney
                                                 Tel: 949-442-6407; Fax: (949) 474-7260
                                                 Doug.Kearney@americantower.com

American Tower Corporation requests that the City of San Diego either extend the original Conditional Use Permit, or in the alternative, approve a new Planned Development Permit, consistent with the original Conditions of Approval under Conditional Use Permit Number 94-0548 *(please refer to attached, original CUP)* to continue to operate, and maintain a wireless communication facility at 4350 Otay Mesa Road. The existing communications facility consists of a 90-foot monopole with nine (9) Sprint Nextel panel antennas and three (3) 16-foot omni-directional antennas mounted at a height of 90 feet and 12 Cingular antennas mounted at a height of 75 feet. Two equipment shelters are located at the base of the pole within the lease area. No additional active equipment or antennas have been added to the existing facility. American Tower is requesting the extension and the Planned Development Permit in order that Lessees, Cingular and Nextel, can continue to provide uninterrupted and seamless wireless service to their customers.

### Planning/Zoning Consistency

As an initial matter, it would be reasonable and appropriate for the City to treat this application as a request for an extension of the existing CUP. The original 10-year CUP was issued on Oct. 3, 1995 and the facility has continued to exist without controversy since it was first approved. American Tower and SpectraSite merged this past year and challenges associated with the consolidation of these two large companies resulted in a backlog of tasks including the renewal of this CUP. On its own initiative, American Tower met with the City to discuss the renewal of this and other CUPs in July 2005.

1

American Tower Corporation
2201 Dupont Drive, Suite 340
Irvine, CA 92612



American Tower has met with and has maintained contact with the City throughout the past few months and has expedited its own internal processes in order to file this application in a timely manner consistent with the requests of City staff.

If the City is willing to treat this request as a request for an extension, then, according to San Diego Mun. Code § 126.0111, CUP No. 94-0548 could be extended up to three years on the basis of the following findings:

> *(1) This project as originally approved would not place the occupants of the proposed development or the immediate community in a condition dangerous to their health or safety.*

The facility poses no danger to the occupants of the property or to the community. Arguably, its removal poses a threat both to the area residents and to the traffic on Highways 805 and 905 by creating a gap in the provision of wireless communication services in a area where traffic related emergencies are routine. The site meets all applicable Building and Electrical Code requirements and complies with all state and federal regulations, including the FCC's maximum permitted exposure (MPE) requirements.

> *(2) No new condition is required to comply with state or federal law.*

American Tower is not aware of any changes to state or federal law that would require the City to impose additional conditions on the facility.

Other than the fact that the CUP expired before being renewed, neither SpectraSIte nor American Tower, nor the Lessees Sprint Nextel and Cingular, violated any conditions of the CUP.

In the event that the City requires American Tower to obtain a new Planned Development Permit for this facility, that permit could be issued on the basis of the findings identified in San Diego Mun. Code §§ 126.0604 (Planned Development Permit). In providing the following information, American Tower notes that existing law governing the zoning of wireless telecommunications facilities does not permit the City to exercise unfettered discretion in its determination that a particular facility meets the City's existing zoning requirements. *Sprint Telephony PCS, LP v. County of San Diego,* 377 F.Supp.2d 886 (S.D. Cal. 2005) *motion for recon. denied* (enjoining enforcement of the County wireless telecommunications ordinance and applicable zoning code requirements on wireless telecommunications facilities on the basis of federal preemption). Accordingly, American Tower offers the following information to facilitate the City's review of this application, but in doing so reserves all rights and does not waive any right to any claim or defense, including federal preemption.

### Findings Required for a Planned Development Permit

American Tower is requesting the City to permit the continued use of a communications facility that has been operational for over ten years and continuously serving the City of San Diego's vital public and private communications needs. Wireless networks are

2

American Tower Corporation
2201 Dupont Drive, Suite 340
Irvine, CA 92612

Exhibit 5
Page 34 of 77

unusual in that there are significant height and location requirements that must be met to ensure their proper and effective use.

The City can permit this communications facility at its present height and location with a Planned Development Permit, subject to the following findings:

> *(1) The proposed development will not adversely affect the applicable land use plan.*

The facility has existed on this site for ten years without controversy. The location, size, design, and operating characteristics of the existing communications facility does not create noise, traffic, or other conditions that may be objectionable, detrimental or incompatible with other permitted uses in the vicinity.

- The facility is located within the San Ysidro School District maintenance yard overlooking Interstate 805 and the California border with Mexico to the South.
- The equipment associated with the facility operates virtually noise-free.
- The equipment does not emit fumes, smoke, dust, or odors that could be considered objectionable.
- The communications facility is unmanned and requires only periodic maintenance.

> *(2) The proposed development will not be detrimental to the public health safety and welfare.*

The existing communications facility has not created conditions or circumstances contrary to the public health, safety, and the general welfare, in that:

- The existing pole provides co-location, reducing the need for other wireless facilities in the area.
- Wireless communications service a critical need in the event of public emergency, including traffic accidents and other freeway incidents.
- Advanced wireless technologies are a use now required local businesses, homes, and schools.
- Digital wireless systems are an economical alternative to wired networks.
- All American Tower facilities operate in full compliance with the regulations and licensing requirements of the FCC, FAA, and CPUC.

> *(3) The proposed development will comply with the applicable regulations of the Land Development Code.*

The communications facility complies with the applicable regulations of the Land Development Code. It was permitted with a Conditional Use Permit in its current location and at its current height. American Tower is proposing no modifications to the communications facility that would alter this finding.

> *(4) The proposed development, when considered as a whole, will be beneficial to the community.*

3

American Tower Corporation
2201 Dupont Drive, Suite 340
Irvine, CA 92612


Exhibit 5
Page 60 of 777

The proposed facility will benefit the community because it will continue to allow commuters, businesses, and residents within the coverage area wireless access to the rapidly expanding communication infrastructure and to voice and data transmission services not currently available.

> (5) Any proposed deviations pursuant to § 126.0602(b)(2) are appropriate for this location and will result in a more desirable project than would be achieved if designed in strict conformance with the development regulations of the applicable zone.

The communications facility is appropriately placed it is adjacent to two major commuter thoroughfares and is located within the San Ysidro School District Maintenance Yard. The monopole and antennas are painted sky blue and the equipment buildings are desert tan to blend with the surrounding area. The monopole is partially screened from view from I-805 by existing mature landscaping. Due to its location within the school district maintenance yard and the fact that there is a 50-foot-high power pole already located within the same maintenance yard, it was determined that the project would not significantly affect the visual qualify and character of the area.

Moreover, reduction in the height of the antennas on this structure to the zone 30-foot limitation will seriously impact the quality and scope of coverage provide by Sprint Nextel from this site. The project therefore is more desirable in its present configuration than it would be if the City strictly enforced the development regulations for this zone.

### Brief Overview of American Tower Corporation

American Tower Corporation (www.americantower.com) is the leading independent owner, operator and developer of broadcast and wireless communications sites in North America. American Tower owns and operates over 22,000 sites in the United States, Mexico, and Brazil. Additionally, American Tower manages approximately 2,000 revenue producing rooftop and tower sites. American Towers customers are leading wireless communications providers, including Cingular, Sprint Nextel and Verizon Wireless, radio and television broadcasters, and federal, state and local government agencies.

4

American Tower Corporation
2201 Dupont Drive, Suite 340
Irvine, CA 92612


Exhibit 5
Page 41 of 777

# EXHIBIT 6

Exhibit 6
Page 62 of 777

# Law Office of Robert Jystad

*100 Oceangate, Suite 1400*
*Long Beach, CA 90802-4323*
*(310) 209-8515; (310) 216-5090 (fax)*
*rjystad@sbcglobal.net*

**By Facsimile and U.S. Mail**
*(619) 236-7228*

March 3, 2006

Mr. James Waring, Esq.
Deputy Chief Operating Officer,
  Land Use and Economic Development
Office of the Mayor
CITY OF SAN DIEGO
202 "C" Street, 11th Floor
San Diego, CA  92101

> Re:    **American Tower CUP Renewals**

Dear Mr. Waring:

I am writing to you on behalf of American Tower Corporation ("ATC"). ATC participated in the telecommunications meeting that you and Ms. Kris Michell held on February 2, 2006. We appreciated the time you spent with us and your attention to our concerns about the Conditional Use Permit ("CUP") permitting process.

We recognize that wireless consultant Doug Sain is working with your office on this and other issues on behalf of several major wireless carriers. Unfortunately for us, time is running short and we are compelled to contact you directly. Last summer, American Tower was forthcoming with the City's Development Services Department ("DSD") about its need to renew a number of CUPs for several monopoles it owns and manages throughout the City. As you are aware, and as we discussed on Feb. 2, the City is not permitting ATC to file for the renewal of its CUPs. Rather, because the CUPs have expired, the City is requiring ATC to file applications for new permits, which in several cases require Planned Development Permits and/or Site Development Permits in addition to the CUPs. ATC coordinated with DSD on the submission of eight new CUP applications prior to the end of 2005 and we are in receipt DSD's assessment letters on most of those applications. The conclusions drawn in these letters are extremely troubling, and, as a result, we met on Tuesday, February 21, 2006, with Senior Planner Karen Lynch Ashcraft to discuss the City's demands. Ms. Lynch Ashcraft confirmed that if American Tower is not willing to meet the requirements outlined in the assessment letters, DSD staff will recommend denial of the permits.

I have listed below some examples of DSD's demands in the assessment letters. The demands are taken from assessment letters on two sites, but they are substantially similar to language in other assessment letters. The first site, Mission San Diego, is a small shelter constructed on a hillside overlooking Qualcomm stadium and Interstate 15. There is no



Exhibit 6
Page 22 of 111

Letter to: Mr. James Waring, Esq.
Date: March 3, 2006
Page 2

monopole. The antennas are affixed to small poles at the height of the shelter, about 15 feet. On February 15, 2006, ATC met with the Kearney Mesa Planning Group about this site. The Group recommended approval of the site AS IS by a vote of 10-0-1, noting that the site was hardly visible.

The second site, San Diego Border, is a 90' foot monopole located in a maintenance yard owned by the San Ysidro School District. The site overlooks Interstate 805 near the Mexican border. On February 21, 2006, ATC met with the San Ysidro Planning and Development Group, which unanimously approved the site AS IS on condition that ATC agree to paint the pole a light tan color to blend in with the adjacent hillside. One member stated: "I am certainly not going to require them to take it down."

The reasonableness of these two Community Planning Groups stands in stark contrast to the DSD assessment letters, which have drawn the following conclusions, among others:

1.  [Mission San Diego]: "The location, above a busy transit corridor is *highly visible, creating a significant visual impact from all vantage points.* The Code requires that a facility be designed to minimize visual impacts by designing the facility so that it is *concealed from public view...*"

2.  Mission San Diego requires a Site Development Permit unless "the project is redesigned to comply with the exemption criteria...pertaining to setbacks..." In order to meet the setback requirement, ATC will need to relocate the facility off the hillside and into the adjacent residential neighborhood.

3.  [Mission San Diego]: "Understanding that the network was built around this facility, it should also be recognized that the Planning Commission imposed a 10-year restriction because it was intended that if there were a better design or technical option available at the end of the time limit, *the facility would be required to be removed.*"

4.  [San Diego Border]: "The prominent location of this property does not lend itself to a 90-foot high monopole or to an institutional equipment shelter."

5.  [San Diego Border]: "With the significant improvements that have been in both the design and technical disciplines, it is expected that this facility *will be replaced...*"

6.  [San Diego Border]: "Since the original CUP is expired, this proposal is being reviewed against today's regulations and policies and therefore a *thorough technical analysis...*will be required."

7.  [San Diego Border]: "A detailed site justification...will be required."

8.  [San Diego Border]: "Understanding that the network was built around this facility, it should also be recognized that the Planning Commission imposed a 10-year restriction

Exhibit 6
Page 64 of 111

Letter to: Mr. James Waring, Esq.
Date: March 3, 2006
Page 3

because it was intended that if there were a better design or technical option available at the end of the time limit, *the pole would be required to be removed.*"

As we discussed on Feb. 2, if the City requires ATC to take these sites down, the carriers they support, including Verizon Wireless, Cingular Wireless and Sprint Nextel, will be forced to reconfigure their networks and to construct several additional sites. Moreover, if DSD is successful in having these sites removed, ATC faces a significant loss of property and will find itself effectively barred from providing services in the City. That said, we are encouraged that the City is willing to consider ATC as part of a solution to its public communications system needs at the Encanto Reservoir location. We will work with DSD and READ on a possible collocation solution on an ATC structure. We note that the City has requested a height of 110 feet for its antennas. We expect to be able to accommodate that request but there is an obvious inconsistency between that request and DSD's demand that ATC and its tenants reduce the height of antennas on its structures or face denial.

ATC cannot take this situation lightly and it is supported by several recent federal court rulings. From our perspective, DSD is taking liberty with the City's ordinances and policies on wireless telecommunications facilities in a manner that we believe is unfair and justifies the type of federal restrictions on local authority that have emerged in several pivotal telecommunications cases. For example, the City's policies and ordinances are substantially similar to San Diego County's wireless telecommunications ordinance that the Southern District permanently enjoined, though the injunction recently was stayed pending appeal. *Sprint Telephony PCS, L.P. v. County of San Diego,* 377 F. Supp. 2d 886 (S.D. Cal. 2005) (County's exercise of unfettered discretion over permits for wireless telecommunications facilities violated federal law). In *County of San Diego,* Sprint successfully argued that federal law (47 U.S.C. § 253) preempted the County's four-tiered application structure and applicable discretionary zoning requirements. Notably, the City's ordinance utilizes a similar four tiered structure.[1]

In finding that § 253 preempted the San Diego County WTO, *County of San Diego* relied heavily on *City of Auburn v. Qwest Corporation,* 260 F.3d 1160, 1175 (9th Cir. 2001) *cert. denied City of Tacoma v. Qwest Corp.,* 534 U.S. 1079 (2002) ("The preemption [of local authority] is **virtually absolute** and its purpose is clear—certain aspects of telecommunications regulation are uniquely the province of the federal government and Congress has narrowly circumscribed the role of state and local governments in this arena") (emphasis added) and *Qwest Communications Corp. v. City of Berkeley,* 146 F. Supp. 2d 1081, 1097-98 (N.D. Cal. 2001) (striking as preempted under § 253 a local ordinance that vested significant discretion to grant or deny permits "based on an open-ended set of criteria and requirements"). The Ninth Circuit recently upheld the *Berkeley* decision noting "We have interpreted this preemptive language to be clear and "virtually absolute" in restricting municipalities to a "very limited and proscribed role in the regulation of telecommunications." *Qwest Communs., Inc. v. City of Berkeley,* 2006 U.S. App. LEXIS 669 at *5-6 (9th Cir., filed Jan 6, 2006).

---

[1] We asked Ms. Lynch-Ashcraft if *County of San Diego* had any impact on DSD's process. She said it did not.



Exhibit b
Page 41 of 717

Letter to: Mr. James Waring, Esq.
Date: March 3, 2006
Page 4

ATC looks forward to working with you and the City to address this problem. We are optimistic that there is a workable solution, but not without a substantial change in the DSD's approach to CUP renewals.

Please contact me at your earliest convenience to discuss this matter further. I can be reached at (310) 209-8515 or rjystad@sbcglobal.net.

Sincerely,

Robert Jystad, Esq.
*Attorney for American Tower*

c:     Elizabeth A. Hill, Esq., American Tower Corporation

Exhibit 6
Page 04 of 47

## Law Office of Robert Jystad

100 Oceangate, Suite 1400
Long Beach, CA 90802-4323
(310) 209-8515; (310) 984-5132 (fax)
rjystad@sbcglobal.net

# FAX COVERSHEET

| To: James Waring<br>     City of San Diego | From: Robert Jystad, Esq.<br>       Attorney for American Tower Corp. |
|---|---|
| Fax:  619-236-7228 | Fax:  562-216-5090 |
| Date: March 3, 2006 | Phone:  310-209-8515 |
| No. of pages (including cover):  5 | Re:  American Tower CUP Renewals |

If there are problems in the reception of this facsimile transmission, please contact Robert Jystad at 310-209-8515. This facsimile transmission may contain confidential or privileged information. If you believe that you have received the transmission in error, please notify the sender immediately and discard the transmission without copying or disclosing it.

Exhibit 6
Page 41 of 77

```
TRANSMISSION VERIFICATION REPORT

                                    TIME : 03/03/2006 16:50
                                    NAME : LAW_OFFICE
                                    FAX  : 15622165090
                                    TEL  : 13109845137
                                    SER.# : 000L5J270442


DATE,TIME           03/03  16:48
FAX NO./NAME        916192367228
DURATION            00:01:37
PAGE(S)             05
RESULT              OK
MODE                STANDARD
                    ECM
```

## Law Office of Robert Jystad

100 Oceangate, Suite 1400
Long Beach, CA 90802-4323
(310) 209-8515; (310) 984-5132 (fax)
rjystad@sbcglobal.net


# FAX COVERSHEET

| To: James Waring<br>City of San Diego<br>Fax: 619-236-7228 | From: Robert Jystad, Esq.<br>Attorney for American Tower Corp.<br>Fax: 562-216-5090 |
|---|---|
| Date: March 3, 2006<br>No. of pages (including cover): 5 | Phone: 310-209-8515<br>Re: American Tower CUP Renewals |

Exhibit 6
Page 11 of 11

# EXHIBIT 7

Exhibit 7
Page // of ///



## THE CITY OF SAN DIEGO

February 7, 2008

Jim Kelly
American Tower Corporation
2201 Dupont Drive, Suite 340
Irvine, CA 92612

Dear Mr. Kelly:

Subject:    American Tower - Border; Project No. 90476

This letter is to inform you that the above-referenced project is being closed out as a result of the Planning Commission's February 7, 2008 decision to deny the appeal and deny Conditional Use Permit No. 289980 and Site Development Permit No. 452372.

The deposit account for the project has been closed.  In approximately 6-8 weeks, the financially responsible party for the deposit account will receive any remaining funds in the account, provided the account is not in deficit.  In the event the account is in deficit, the financially responsible party will continue to receive account statements showing the negative balance due until payment is received.

Neighborhood Code Compliance will be informed of the expired Conditional Use Permit.

If you have any questions, I can be reached at (619) 446-5351 or via e-mail at klynchashcraft@sandiego.,gov

Sincerely,

Karen Lynch-Ashcraft
Development Project Manager

Enclosures:
1.  Resolution

cc:    File

Exhibit 7
Page 10 of 11

PLANNING COMMISSION
RESOLUTION NO. 4366-PC
CONDITIONAL USE PERMIT NO. 289980
SITE DEVELOPMENT PERMIT NO. 452372
**AMERICAN TOWER – BORDER**
PROJECT NO. 90476

WHEREAS, San Ysidro School District, Owner and American Tower Corporation, Permittee, filed an application with the City of San Diego for a permit for a wireless communication facility (as described in and by reference to the approved Exhibits "A" and corresponding conditions of approval for the associated Conditional Use Permit No.289980 and Site Development Permit No. 452372, on portions of an 11.74 acre site;

WHEREAS, the project site is located at 4350 Otay Mesa Road in the RS-1-7 zone of the San Ysidro Community Plan;

WHEREAS, the project site is legally described as a Portion of Section 36, Township 18 south, Range 2 west, San Bernardino Meridian in the City of San Diego, County of San Diego, State of California;

WHEREAS, on August 1, 2007, the Hearing Officer continued this project to September 12, 2007, in order to obtain additional information from staff and the applicant;

WHEREAS, on September 12, 2007, the Hearing Officer of the City of San Diego reviewed, considered and denied Conditional Use Permit No. 289980 and Site Development Permit No. 452372, pursuant to the Land Development Code of the City of San Diego;

WHEREAS, on September 21, 2007, Julian Quattlebaum, of Channel Law Group, on behalf of American Tower Corporation, appealed the Hearing Officer's decision;

WHEREAS, on December 13, 2007, the Planning Commission of the City of San Diego, considered Conditional Use Permit No. 289980 and Site Development Permit No. 452372, and pursuant to the Land Development Code of the City of San Diego, continued the project until February 7, 2008 in order to give the applicant time to return with design options that complied with the Land Development Code;

WHEREAS, on February 7, 2008, the Planning Commission of the City of San Diego, reviewed, considered and denied Conditional Use Permit No. 289980 and Site Development Permit No. 452372, pursuant to the Land Development Code of the City of San Diego; NOW, THEREFORE,

BE IT RESOLVED by the Planning Commission of the City of San Diego as follows:

That the Planning Commission adopts the following written Findings, dated February 7, 2008.

Exhibit 7
Page 11 of 777

FINDINGS:

**Conditional Use Permit - Section 126.0305**

**1.    The proposed development will not adversely affect the applicable land use plan;**

This facility was originally approved by the City Council on October, 3, 1995. The Conditional Use Permit (CUP) included a ten year expiration. At the time of approval, the City did not have applicable regulations for these types of facilities so the City Council imposed a ten year limit in order to re-evaluate the project in light of new regulations and or policies that may be in effect. The project exists as it did after initial construction and the new owner, American Tower Corporation is now seeking to obtain another CUP to maintain the facility as is.

Neither the City of San Diego General Plan nor the San Ysidro Community Plan addresses wireless communication facilities as a specific land use.

**2.    The proposed development will not be detrimental to the public health, safety, and welfare;**

The Telecommunication Act of 1996 preempts local governments from regulating the "placement, construction and modification of wireless communication facilities on the basis of the environmental effects of Radio Frequency (RF) emission to the extent that such facilities comply with the Federal Communication Commission's (FCC) standards for such emissions." If the decision maker approves the existing facility, a condition will be included within the permit to require American Tower or their tenants to perform a cumulative model RF test and submit the finding in a report to the City of San Diego within 90 days of approval of the CUP.

**3.    The proposed development will comply to the maximum extent feasible with the regulations of the Land Development Code; and**

This facility was originally approved by the City Council on October 3, 1995. The Conditional Use Permit (CUP) included a ten year expiration. At the time of approval, the City did not have applicable regulations for these types of facilities so the City imposed a ten year time limit in order to re-evaluate the project in light of new regulations and or policies that may be in effect. The project exists as it did after initial construction and the new owner, American Tower Corporation is now seeking to obtain another CUP to maintain the facility as is.

Since 2000, the City has had a Communication Antenna ordinance that requires architectural or environmental integration with the project site. Pursuant to the San Diego Land Development Code, wireless communication facilities are permitted in all zones citywide with the appropriate permits. Wireless communication facilities are separately regulated uses, which have limitations or require compliance with conditions in order to minimize potential impacts. The intent of the regulations is to camouflage facilities from public view. In this case, the monopole is the tallest structure in and around the area in which it is located and as such, it has an incongruous effect on the community's landscape. It is situated prominently along Interstate-805, which serves as a major north south transportation corridor and it poses an unsightly visual impact for commuters

Exhibit 7
Page 10 of 111

that utilize this corridor. It is not designed to be minimally visible through the use of architecture, landscape architecture and siting solutions.

Section 141.0405 of the Land Development Code differentiates between minor and major telecommunication facilities. Minor telecommunication facilities include those that are concealed from public view or integrated into the architecture or surrounding environment through architectural enhancement (enhancements that complement the scale, texture, color and style) unique design solutions, or accessory use structures. Major telecommunication facilities are antenna facilities that do not meet the criteria for minor telecommunication facilities or they are located in residential zones containing residential uses. Similar to minor facilities, they also need to be designed to be minimally visible through the use of architecture, landscape architecture and siting solutions. The Border project does not conform to this code requirement. American Tower Corporation submitted the application for a Conditional Use Permit on December 2, 2005 and did not propose any modifications to the facility. No attempt to comply with the regulations was made by American Tower until the project was before the Planning Commission in 2008. At that point, an enhanced landscape plan was presented to address the landscape architecture requirement of the regulations, but nothing to address minimizing the visibility of the facility through architecture or siting solutions. As it exists, it is a significant visual impact along Interstate-805, which serves as a major transportation corridor through the city. Many commuters pass through this section of the city on a daily basis and are subjected to the unsightliness associated with this project.

Therefore, the project does not comply to the maximum extent feasible with the regulations of the Land Development Code.

**4.    The proposed use is appropriate at the proposed location.**

A wireless communication facility at this location is an appropriate use subject to compliance with the ordinances and policies that regulate these types of facilities. Due to the fact that the existing facility does not comply with current regulations and policies, this finding cannot be affirmed. A facility that better integrates into the property and takes into consideration the surroundings and the proximity to Interstate-805 would be more appropriately located on this property.

## Site Development Permit - Section 126.0504

**1.    The proposed development will not adversely affect the applicable land use plan;**

This facility was originally approved by the City Council on October, 3, 1995. The Conditional Use Permit (CUP) included a ten year expiration. At the time of approval, the City did not have applicable regulations for these types of facilities so the City Council imposed a ten year limit in order to re-evaluate the project in light of new regulations and or policies that may be in effect. The project exists as it did after initial construction and the new owner, American Tower Corporation is now seeking to obtain another CUP to maintain the facility as is.

Neither the City of San Diego General Plan nor the San Ysidro Community Plan addresses wireless communication facilities as a specific land use.

Exhibit 7
Page 72 of 77

2. **The proposed development will not be detrimental to the public health, safety, and welfare; and**

The Telecommunication Act of 1996 preempts local governments from regulating the "placement, construction and modification of wireless communication facilities on the basis of the environmental effects of Radio Frequency (RF) emission to the extent that such facilities comply with the Federal Communication Commission's (FCC) standards for such emissions." If the decision maker approves the existing facility, a condition will be included within the permit to require American Tower or their tenants to perform a cumulative model RF test and submit the finding in a report to the City of San Diego within 90 days of approval of the CUP.

3. **The proposed development will comply with the applicable regulations of the Land Development Code.**

The monopole complies with all the development regulations of the RS-1-7 zone except for the height limit of 30 feet. The monopole is 90 feet high and is situated prominently alongside of Interstate-805. Development in the area is low in scale and in addition to the school district maintenance yard; uses include single unit residential uses, an elementary school and vacant land. The San Ysidro Planned District Ordinance requires an SDP in order to grant a deviation, but it also states that an SDP shall only be granted for the purpose of providing design flexibility which would result in a project that would benefit surrounding properties and the community. This project does not visually benefit the community as it is not designed to be minimally visible through the use of architecture, landscape architecture and siting solutions.

This project was originally constructed in the mid-1990's when Nextel was still developing their network. Typically, carriers initially built tall facilities, later filling in their networks with lower sights. A 30 foot high faux tree exists on this site and is owned by Sprint. Sprint and Nextel merged a couple of years ago, which would now allow the company to consider consolidating technologies at this site.

BE IT FURTHER RESOLVED that, based on the findings hereinbefore adopted by the Planning Commission, Conditional Use Permit No. 289980 and Site Development Permit No. 452372 is hereby DENIED by the Planning Commission.

_____
Karen Lynch-Ashcraft
Development Project Manager
Development Services

Adopted on:  February 7, 2008

Job Order No. 42-5670

Exhibit 7
Page 14 of 17

# EXHIBIT 8

Exhibit 8
Page 10 of 717